# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **HEATHER TALLENT,**<br><br>    **Plaintiff,**<br><br>V.<br><br>**MEDICAL STAFFING OF AMERICA, LLC, d/b/a STEADFAST MEDICAL STAFFING,**<br><br>    **Defendant.** | **COMPLAINT** |

COMES NOW Plaintiff, Heather Tallent ("Plaintiff" or "Ms. Tallent"), by and through undersigned counsel, The Kirby G. Smith Law Firm, LLC, and hereby files this Complaint against the Defendant Medical Staffing of America, LLC, d/b/a Steadfast Medical Staffing ("Defendant" or "MSA"), stating as follows:

## I. PARTIES

1.  Plaintiff is a citizen of the United States and a resident of Forsyth County, NC.

2.  Defendant is a corporation that is headquartered and registered to conduct business in the State of Virginia.

3.  Defendant may be served through its registered agent, Ms. Lisa Pitts, located at 5750 Chesapeake Blvd, Ste 301, Norfolk, VA 23513.

## II. JURISDICTION AND VENUE

4.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises out of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

5.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count II of this Complaint, which arises out of the same transaction or occurrence as Count I.

6. This Court has jurisdiction over the parties of this action because a substantial portion of the employment practices described herein took place in Forsyth County, North Carolina.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Plaintiff was an employee of Defendant under FLSA.

9. Defendant's employees, including Plaintiff, routinely handled or otherwise worked on goods or materials that had been moved in interstate commerce. Defendant's employees also engaged in interstate commerce by traveling across state lines to provide medical care.

10. Defendant's enterprise has an annual gross volume of sales of at least $500,000.

11. Defendant is subject to the requirements of the FLSA.

### III. FACTUAL ALLEGATIONS

12. Plaintiff worked for Defendant as a Licensed Nurse Practitioner (LPN) from approximately April 2020 until May 2021.

13. In a separate legal proceeding in the Eastern District of Virginia (case no. 2:18-cv-00226-RAJ-LRL), Defendant stipulated that it received annual gross earnings in excess of $500,000 "since at least August 18, 2015." This stipulation can be found in a Memorandum Opinion and Order issued in that case on January 14, 2022, docket entry 324.

14. Upon information and belief, Defendant continued to receive annual gross earnings in excess of $500,000 throughout Plaintiff's employment with Defendant.

15. Defendant is a nursing registry that maintains a database of licensed nurses and connects those nurses with work opportunities at healthcare facilities.

16. Defendant receives staffing requests from healthcare facilities with which it has contracted ("client-facilities" or "facilities"), identifies nurses on its registry who satisfy the facilities' needs, then provides the nurses with the opportunity to accept assignments with those

facilities.

17. Defendant provides staffing services for businesses located across state lines.

18. Defendant was responsible for compensating the assigned nurses for all hours worked.

19. "Medical Staffing America" appears on Plaintiff's paystubs and earnings statements.

20. Before a nurse is added to Defendant's registry, the nurse is required to complete an application that includes questions about the nurse's employment history, skill set, and references.

21. Upon information and belief, Defendant repeatedly refers to itself as an "employer" and the nurses as "employees" in the application.

22. Upon information and belief, Defendant occasionally refers to the application as an "application for employment" in the application and related documents.

23. Defendant pays for the nurses to undergo a credentialing process, in which Defendant (1) performs a background check; (2) confirms that the nurse is properly licensed; (3) conducts a drug screening and tuberculosis test; (4) has the nurse sign a Health Insurance Portability and Accountability Act ("HIPAA") compliance form; and (5) confirms that the nurse has a negative COVID test or proof of vaccination.

24. Once a nurse is added to Defendant's registry, Defendant trains the nurse on the following topics: HIPAA compliance, substance abuse, and harassment.

25. Upon information and belief, the nurses are also covered under Defendant's insurance policy, and Defendant is responsible for processing all workers' compensation claims for any injuries the nurses incur while working at a facility.

26. Upon information and belief, some nurses on Defendant's registry are required to wear badges bearing the name,"Steadfast Medical," while working at client-facilities.

27. Upon information and belief, Defendant maintains "employee change" forms for the nurses that document each nurse's "hire/term date" and "tax jurisdiction."

28. Upon information and belief, the nurses are not permitted to hire other nurses, employees, or contractors to work for them at client-facilities.

29. Defendant identifies available shifts and then communicates with nurses regarding available shifts via phone, email, or text.

30. The nurses must notify and/or obtain approval from Defendant, not client-facilities, when they are running late to a shift, want time off, are sick, or otherwise cannot complete a shift.

31. Defendant determines the nurses' hourly pay rate, and nurses cannot negotiate their pay rate with Defendant.

32. Defendant is solely responsible for compensating the nurses and handling any compensation related issues, including wage garnishments.

33. Defendant pays the nurses an hourly rate from its own financial accounts on a weekly basis.

34. Upon information and belief, Defendant guarantees the nurses their hourly pay rate for hours worked, regardless of whether a client-facility pays Defendant for the nurse's work.

35. Defendant requires the nurses to track their hours when working at client-facilities using timesheets that were created by Defendant and then submit those timesheets to Defendant for payment.

36. Defendant disciplines nurses by canceling nurses' shifts or otherwise removing them from the schedule.

37. Upon information and belief, Defendant disciplines nurses for a variety of reasons including, but not limited to, discussing compensation with a co-worker or client-facility;

attempting to contact client-facilities to set their own schedules or rates; being recruited by a client- facility; working for a competitor; declining or canceling shifts; and being intoxicated or otherwise engaged in unprofessional conduct while working at a client-facility.

38. Defendant instructs nurses on how they should behave while working at client-facilities by sending the nurses written memorandums on topics including, but not limited to, work attire, punctuality, and timekeeping.

39. The Board of Nursing contacts Defendant if it has any questions or issues with the nurses on Defendant's registry.

40. Upon information and belief, in or around 2019 and 2020, nurses complained to Defendant on numerous occasions that they were not receiving overtime.

41. Upon information and belief, client-facilities rely on Defendant to ensure that the nurses are properly licensed and otherwise qualified for work.

42. Upon information and belief, client-facilities are prohibited from recruiting the nurses on Defendant's registry.

43. Upon information and belief, Defendant enforces the prohibition by requiring facilities to first buy out Defendant's contract with a particular nurse or by removing nurses who receive employment offers from facilities from the registry.

44. Upon information and belief, in some of Defendant's staffing contracts with healthcare facilities, the nurses on Defendant's registry are expressly designated as "employees" or "employed personnel" of Defendant, and Defendant assumes all legal responsibility as the nurses' "employer."

45. The hourly rate a facility pays Defendant is not the same rate Defendant pays the nurses. Defendant retains a percentage of the hourly rate charged to facilities as revenue.

46. Client-facilities do not interview applicant nurses, including Plaintiff.

47. There is no contractual relationship between the nurses, including Plaintiff, and client-facilities.

48. Plaintiff was primarily assigned to work at Accordius Health locations in Forsyth County.

49. Defendant does not provide client-facilities with a complete listing of the nurses on its registry or the nurses' contact information; Defendant decides which nurse is sent to respond to the client-facilities' needs.

50. Defendant does not permit the nurses to negotiate their hourly pay rate with client-facilities directly.

51. Client-facilities do not discipline the nurses and contact Defendant regarding any issues they may have with a nurse's performance.

52. Defendant does not record the hours worked for straight-time pay separately from the hours worked for overtime pay.

53. Upon information and belief, Defendants never contacted any personnel within the U.S. Department of Labor ("DOL") to determine whether their compensation policies complied with the FLSA.

54. Plaintiff received $35 per hour from Defendant, regardless of how many hours she actually worked per week.

55. Between April 17, 2020, and September 10, 2020, Plaintiff worked 94.8 hours that should have been classified as overtime but were not.

56. If Defendant had properly paid Plaintiff her overtime for this period, she would have received an additional $17.50 per hour, which equals $1,659.

57. Between September 11, 2020, and May 17, 2021, Plaintiff worked 919 hours that should

have been classified as overtime but were not.

58. If Defendant had properly paid Plaintiff her overtime for this period, she would have received an additional $17.50 per hour, which equals $16,082.50.

## IV. CLAIM FOR RELIEF

### COUNT I

### FLSA: UNPAID OVERTIME

59. Plaintiff incorporates by reference paragraphs 1-58 of her Complaint as if fully set forth herein.

60. Plaintiff was an employee of Defendant.

61. Defendant is subject to enterprise coverage under FLSA.

62. Plaintiff worked 1027.8 hours that qualified as overtime under the FLSA.

63. Plaintiff is entitled to one and one-half times her regular rate for each hour of overtime worked.

64. Defendant willfully failed to pay Plaintiff her overtime rate.

### COUNT IV

### NC WAGE AND HOUR ACT: UNPAID OVERTIME

65. Plaintiff incorporates by reference paragraphs 1-58 of her Amended Complaint as if fully set forth herein.

66. Plaintiff pleads this claim as an alternative to her FLSA claim for unpaid overtime in the event FLSA is not applicable.

67. Plaintiff was an employee of Defendant.

68. Plaintiff worked 1027.8 hours that qualified as overtime under the NC Wage and Hour Act

69. Plaintiff is entitled to one and one-half times her regular rate for each hour of overtime worked.

70. Defendant willfully failed to pay Plaintiff her overtime rate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

a. Trial by jury;

b. A finding that Defendant violated Plaintiff's rights as set forth herein;

c. All unpaid wages plus interest, liquidated damages, punitive damages, reasonable attorney fees, and costs in accordance with the FLSA and/or the NC Wage and Hour Act; and

d. Any other relief this Court deems proper and just.

Respectfully submitted this 12th day of September, 2022.

THE KIRBY G. SMITH LAW FIRM, LLC

/s/Alexander C. Kelly
Alexander C. Kelly
North Carolina Bar No. 49308
*Attorney for Plaintiff*

THE KIRBY G. SMITH LAW FIRM, LLC
111 N. Chestnut St.
Suite 200
Winston-Salem, NC 27101
T: (704) 729-4287
F: (877) 352-6253
ack@kirbygsmith.com

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 12th day of September, 2022.

THE KIRBY G. SMITH LAW FIRM, LLC


/s/Alexander C. Kelly
Alexander C. Kelly
North Carolina Bar No. 49308
*Attorney for Plaintiff*


THE KIRBY G. SMITH LAW FIRM, LLC
111 N. Chestnut St.
Suite 200
Winston-Salem, NC 27101
T: (704) 729-4287
F: (877) 352-6253
ack@kirbygsmith.com